UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EDDY BUCHANAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02690-JMS-TAB |
| | ) | |
| MIFFLEN, | ) | |
| PETTY, | ) | |
| WARDEN DICK BROWN, | ) | |
| MR. THOMSON, | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Granting Defendants' Motion for Summary Judgment
and Entering Final Judgment**

**I. Background**

In this civil action, plaintiff Eddy Buchanan, an Indiana prisoner incarcerated at the New Castle Correctional Facility alleges that the defendants failed to protect him from multiple assaults while he was incarcerated at the Wabash Valley Correctional Facility ("Wabash Valley").

Presently pending before the Court is the motion for summary judgment filed by defendants Brian Mifflin, Michael Petty, Richard Brown, and David Thomson on December 1, 2017. Dkt. 23. This motion is fully briefed.

The defendants' motion argues that the claims alleged against them are barred under the exhaustion provision of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, that requires a prisoner to first exhaust his available administrative remedies before filing a lawsuit in court. Mr. Buchanan argues in response that attempts to complete the grievance process were obstructed by Wabash Valley staff to stop civil rights actions from being filed and that the grievance process was therefore not available to him. For the reasons set forth in this Entry, the defendants' motion for summary judgment, dkt. [23], is **granted**.

## II. Legal Standards

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the PLRA, which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; s*ee Porter v. Nussle,* 534 U.S. 516, 524-25 (2002).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). The requirement to exhaust provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (citation omitted). Exhaustion of available administrative remedies "'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Id.* at 90 (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Proper use of the facility's grievance system requires a prisoner "to file complaints and appeals in the

place, and at the time the prison's administrative rules require." *Pozo*, 286 F.3d at 1025; *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

"An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). An administrative procedure is unavailable when "it operates as a simple dead end," when it "might be so opaque that it becomes, practically speaking, incapable of use" or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006). So here, the defendants bear the burden of demonstrating that the plaintiff failed to exhaust all available administrative remedies before he filed this suit. *Id.* at 681.

### III. Discussion

#### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standard set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Buchanan as the non-moving party with respect to the motion for summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).

In his complaint, Mr. Buchanan alleged that on March 1, 2016, he reported a violation of the Prisoner Rape Enforcement Act. Soon after, his cell mate was removed from their cell. He alleges that defendants Petty and Mifflen leaked the report of the sexual assault and as a result Mr. Buchanan was labeled a snitch, which caused his life to be placed in danger. Inmates that affiliate with the Moorish Science Temple of America made requests to defendants Petty and Mifflen that

Mr. Buchanan be transferred because a hit had been placed on him. Mr. Buchanan was transferred to a cell with an inmate with a history of committing sexual assault. On May 19, 2016, an officer allegedly reported he watched this inmate perform oral sex on Mr. Buchanan while he (Mr. Buchanan) was asleep. Mr. Buchanan was transferred to disciplinary housing for sexual misconduct.

He also alleged that on June 20, 2016, he was transferred to a cell with an individual that had allegedly murdered homosexuals. Mr. Buchanan suffered a mental break down and the defendants Brown, Mifflen, Petty, and Thomson agreed to move him back to the dorm where his life was in danger previously.

Mr. Buchanan alleged he was attacked in the showers and lost consciousness on October 21, 2016. He sustained multiple injuries that he still suffers from. Soon after, he was attacked again by the same individuals. As he prepared to defend himself, he was taken in to custody and placed in segregated housing.

Mr. Buchanan also alleged that Superintendent Dick Brown failed to establish a sexual assault response team that would provide support to victims of sexual assault.

Mr. Buchanan was incarcerated at Wabash Valley when the events that form the basis of the complaint occurred. Teresa Littlejohn was at all relevant times the Grievance Specialist at Wabash Valley. Indiana Department of Correction ("IDOC") Policy and Administrative Procedure 00-02-301 sets forth the Offender Grievance Process. This IDOC policy governs the grievance process and how an offender can exhaust his administrative remedies using that process. The Offender Grievance Process was in place during the time Mr. Buchanan alleges his rights were violated.

As an inmate incarcerated with the IDOC, Mr. Buchanan had access to the Offender Grievance Process. The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. All offenders are made aware of the Offender Grievance Process during orientation and a copy of the process in included in the orientation paperwork received upon intake at Wabash Valley.

The grievance process consists of three stages. First, an offender must attempt to resolve the grievance informally through officials at the facility by contacting staff to discuss the matter or incident that is the subject of the grievance. The offender must seek an informal resolution within five working days of the incident.

If the offender is unable to obtain a resolution of the grievance informally, he may submit a formal written complaint, state form 45471, to the Grievance Specialist. The formal grievance must be submitted within five working days from: 1) the date a staff member informs the offender there will be no informal resolution to the grievance; or 2) the date the offender refuses the informal resolution offered by the staff. Otherwise, the formal grievance must be submitted by the tenth working day after the offender first seeks an informal resolution, but no later than twenty working days from the date of the incident giving rise to the offender's grievance.

The formal grievance is screened by the Grievance Specialist to determine whether the submitted grievance meets the requirements for a formal grievance set forth in the IDOC grievance policy. If the formal grievance is rejected, the grievance is returned to the offender with a return of grievance form indicating the reason for the rejection. The offender is permitted to resubmit a corrected grievance within five working days. Once an adequate formal grievance is submitted, the Grievance Specialist assigns it a case number and provides a receipt to the offender.

If the formal grievance is not resolved in a manner that satisfies the offender, the offender may file an appeal to the grievance manager within ten days of receiving the response to the formal grievance. Alternatively, if the offender does not receive a response to his formal grievance within fifteen working days, he may submit an appeal as if the grievance had been denied. The grievance appeal must be submitted on state form 45473. Dkt. 23-2.

A grievance appeal is submitted by the offender to the grievance office. It is entered into the OGRE system and sent electronically to the final reviewing authority at IDOC Central Office.

Exhaustion requires completing all three steps of the grievance process, including submitting the formal grievance and the grievance appeal on the proper forms. Dkt. 23-1, ¶¶ 6-18.

Mr. Buchanan's offender packet contains correspondence from him dated July 27, 2016. This correspondence makes allegations against defendants Petty and Mifflin in relation to the Prison Rape Elimination Act. Dkt. 23-1, ¶ 30; dkt. 23-11. Mr. Buchanan states that this correspondence is in regard to an informal and formal grievance. Dkt. 23-11.

On December 1, 2016, Ms. Littlejohn received a request for interview form from Mr. Buchanan asking about a formal grievance he filed on or about November 1, 2016.[1] Dkt. 23-3. Mr. Buchanan states he placed the formal grievance in his door for the nightly mail pick up. Dkt. 28, p. 3. Mr. Buchanan and Ms. Littlejohn then corresponded back and forth from December 1 through December 12, 2016, regarding the status of his informal and formal grievances. Ms. Littlejohn

---

[1] In his response in opposition to summary judgment, Mr. Buchanan states he submitted the formal grievance on November 1, 2016. Dkt. 28, p. 3. In the request for interview form submitted to Ms. Littlejohn he states he submitted the formal grievance on November 17, 2016. For purposes of this motion, the Court will treat this as the same formal grievance.

informed him that she did not receive his informal or formal grievances. Dkt. 23-1, ¶¶ 22-23; dkt. 23-3.

Mr. Buchanan then attempted to refile this informal and formal grievance on December 12, 2016, by submitting a formal grievance form. Dkt. 23-4. He explained in the form that he completed an informal grievance on October 23, 2016, that he submitted to Ms. Littlejohn. He stated he received a response on October 28, 2016. He also asserted that he filed a formal grievance on November 1, 2018, but it never made it to Ms. Littlejohn. He further explains that in the October 23, 2016, informal grievance (submitted on December 12, 2016), Mr. Buchanan alleged he was jumped, punched, beat, and kicked for approximately 10 minutes, but no officers responded. He requested that cameras be placed in the gym area where he was attacked and requested an emergency transfer. Dkt. 23-4.

Ms. Littlejohn issued a return of grievance on December 12, 2016, notifying Mr. Buchanan that his formal grievance was filed too late and he failed to show good cause for the delay. Dkt. 23-1, ¶ 24; dkt. 23-5. Mr. Buchanan wrote her a letter stating that a copy of his formal grievance was sent to the Central Office in Indianapolis in case the original was lost or destroyed. He also stated that grievances were mismanaged by staff and asked that his grievance be processed because of the reason for untimeliness (being allegedly lost). Dkt. 23-6. Mr. Littlejohn responded that she was holding firm to her decision that his formal grievance was untimely. Dkt. 23-1, ¶ 25; dkt. 23-8. He sent her another letter on December 20, 2016, asking if this grievance had been processed. Dkt. 23-1, ¶ 26; dkt. 23-9. She responded that one grievance had been returned to him, and that he should discuss grievance issues with his caseworker. Dkt. 23-1, ¶ 27; dkt. 23-9.

That same day Mr. Buchanan sent Ms. Littlejohn another letter indicating he would wait for the Central Office's response. Dkt. 23-1, ¶ 28; dkt. 23-10.

**B. Analysis**

It is undisputed Mr. Buchanan did not complete the grievance process with respect to his claim that the defendants failed to properly protect him from multiple assaults. He argues, however, that his attempts to complete the grievance process were obstructed by Wabash Valley staff to stop civil rights actions from being filed and the grievance process was therefore not available to him.

In his response in opposition to summary judgment, Mr. Buchanan states that he submitted an informal grievance on October 23, 2016, to Ms. Littlejohn and received a response on October 28, 2016. He then states that he filed a formal grievance on November 1, 2016, by placing it in his door for the nightly mail pick up, but it never made it to Ms. Littlejohn. Dkt. 28, pp. 2-3. He waited thirty days for a response.

Mr. Buchanan does not contend that he attempted to file an appeal of his formal grievance. Regarding the filing of an appeal, the IDOC policy states: If the formal written complaint is not resolved in a manner that satisfies the offender, the offender may file an appeal to the grievance manager within ten days of receiving the response to the formal appeal. Alternatively, if the offender does not receive a grievance response to his formal grievance within fifteen working days, he may submit an appeal. The grievance appeal must be submitted on state form 45473. Mr. Buchanan never took this step and completing all steps of the grievance process is required by the grievance policy.

He argues that attempts to complete the grievance process were obstructed by Wabash Valley staff to stop civil rights actions from being filed and the grievance process was therefore not available to him. However, based on Mr. Buchanan's own time line, he did not know his formal grievance was not received until he submitted an inquiry on December 1, 2016. He did not follow

the IDOC grievance policy and submit an appeal when he did not receive a response within fifteen working days of submitting the formal grievance on November 1, 2016. Exhaustion requires completing all three steps of the grievance process, including submitting an appeal if the offender does not receive a grievance response to his formal grievance within fifteen working days. Mr. Buchanan did not complete the final step. As such, Mr. Buchanan failed to exhaust his administrative remedies.

To the extent Mr. Buchanan's July 27, 2016, correspondence can be considered a grievance, he did not follow the guidelines or timelines in the IDOC offender grievance policy. Rather, he states this letter is in regard to an informal or formal grievance. It is not on the proper state form and it was not filed within five days of any of the dates (March 1, 2016, May 19, 2016, June 20, 2016, and October 21, 2016) he alleged the defendants failed to protect him.

"[A] court may not excuse a failure to exhaust, even to take such [special] circumstances into account." *Ross*, 136 S. Ct. at 1856 (citing *Miller v. French,* 530 U.S. 327, 337 (2000)). The undisputed facts reflect that Mr. Buchanan failed to exhaust his administrative remedies prior to filing this civil action. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that the action should not have been brought and must now be dismissed without prejudice. *Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## Conclusion

The defendants' motion for summary judgment, dkt. [23], is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 3/26/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

EDDY BUCHANAN
940910
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov